UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-08505 PSG-PJW | Date | December 21, 2017 |
|---|---|---|---|
| Title | In Re Arrowhead Pharmaceuticals, Inc. Securities Litigation | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**   **The Court GRANTS Defendant's Motion to Dismiss**

Before the Court is Defendant Arrowhead Pharmaceuticals, Inc.'s motion to dismiss Plaintiffs' Consolidated Second Amended Complaint. Dkt. # 83 ("*Mot*."). Plaintiff filed an opposition, *see* Dkt. # 86 ("*Opp.*"), and Defendant replied, *see* Dkt. # 90 ("*Reply*"). After considering the arguments in the moving, opposing, and reply papers, the Court GRANTS Defendant's motion without leave to amend.

I.   Background

The Court outlined the facts of the case in detail in its September 20, 2017 order granting Defendant's motion to dismiss, and will thus repeat only the bare facts here. *See* Dkt. # 72 ("*Order*"). Defendant Arrowhead ("Defendant"), a biopharmaceutical company, developed a drug called ARC-520, which was designed to use a delivery system called the "Dynamic Polyconjugate siRNA delivery platform," also known as "DPC," primarily for the treatment of hepatitis B. *See* Dkt. # 80, *Second Amended Complaint* ("*SAC*") ¶¶ 1-3. Defendant conducted preclinical tests of ARC-520 in rodents and non-human primates beginning in June 2012 and began clinical (human) trials of ARC-520 in the fall of 2013. *Order* 1?2. After a phase 2a study, Defendant sought the U.S. Food & Drug Administration's ("FDA") approval to begin phase 2b, a multiple-dose study of ARC-520. *Id* 2. In January 2015, the FDA responded, requesting a "more traditional rising multiple-dose study" beginning with a dose of 1 mg/kg rather than the proposed 2. *Id*. The FDA placed a partial clinical hold on the study, requesting data from the single-dose phase 2a study, as well as data from an ongoing multiple-dose study in non-human primates (sino monkeys). *Id*. Defendant submitted a revised protocol on February 9, 2015, and the FDA removed the hold and allowed testing in humans to continue. *Id*.

At some point during this clinical trials process, either late 2015 or early 2016, according to Plaintiffs, or September 2016, according to Defendant, a concurrent ARC-520 non-human primate study resulted in the deaths of the sino monkeys at the highest doses. *Id*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-08505 PSG-PJW | Date | December 21, 2017 |
|---|---|---|---|
| Title | In Re Arrowhead Pharmaceuticals, Inc. Securities Litigation | | |

On November 8, 2016, the FDA verbally informed Defendant that it was placing a clinical hold on its phase 2b study of ARC-520 until the exact cause of the monkey deaths could be established. *Id*. Defendant informed investors of the partial hold the same day it received word from the FDA and as a result, Arrowhead's share price fell $1.91, or 31.26%. *Id*. Three weeks later, Defendant announced it would discontinue its clinical trials of ARC-520 and other drugs incorporating the intravenous EX1 delivery system. *Id*. The next day, the price of Defendant's stock fell by $2.95 per share, or over 67%. *Id*.

Plaintiffs allege that throughout the Class Period (January 12, 2015 through November 29, 2016), Defendant made numerous statements to the press, its investors, and to the SEC indicating that its clinical trials were progressing without any adverse toxicity or serious adverse events. *SAC* ¶¶ 7, 8. Plaintiffs allege these statements were materially misleading in violation of Rule 10b-5 in two ways: first, they omitted the fact that the ARC-520 technology was dangerously toxic to humans, a fact that Defendant knew; and second, that Defendant misrepresented the data it was receiving from the non-human primate trials, concealing that ARC-520 had in fact killed the sino monkeys in the study. *Id*. The SAC includes claims for: (1) Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5; and (2) Violation of Section 20(a) of the Exchange Act. *SAC* ¶¶ 70?72.

II. Procedural History

Plaintiffs filed their first complaint on November 15, 2016, *see* Dkt. #1, followed by a consolidated complaint on April 28, 2017, *see* Dkt. # 54, *Consolidated Complaint* ("*Compl*."). Defendant's motion to dismiss Plaintiffs' consolidated complaint was granted on September 20, 2017; the Court determined that Plaintiffs had failed to allege sufficient facts showing material misstatements or omissions as to the toxicity levels of the ARC-520 technology, specifically that the drug was dangerously toxic to humans, and that Defendant had concealed that fact. *See Order*. The Court also determined that Plaintiffs failed to sufficiently plead that Defendant acted with deliberate recklessness or intentional or conscious misconduct, thus failing to establish the requisite scienter. *Id*. 18. The Court did not address Plaintiffs' loss causation argument or Section 20(a) cause of action, having found no underlying misstatement or violation of federal law. *Id*. 18.

Plaintiffs filed their SAC on October 26, 2017, and Defendant now moves to dismiss it, arguing that Plaintiffs have again failed to allege an actionable misstatement or omission in violation of Section 10(b). *See Mot*. 6.

III. Legal Standard

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-08505 PSG-PJW | Date | December 21, 2017 |
|---|---|---|---|
| Title | In Re Arrowhead Pharmaceuticals, Inc. Securities Litigation | | |

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *Turner v. City & Cty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Through the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Congress imposed heightened pleading standards on federal securities fraud actions. *See* 15 U.S.C. §§ 78u-4(b)(l)-(2). "The PSLRA significantly altered pleading requirements in private securities fraud litigation by requiring that a complaint plead with particularity both falsity and scienter." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084 (9th Cir. 2002), *abrogated on other grounds as recognized in South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). "The purpose of this heightened pleading requirement was generally to eliminate abusive securities litigation and particularly to put an end to the practice of pleading fraud by hindsight." *Vantive*, 283 F.3d at 1084–85 (quoting *In re Silicon Graphics Sec. Inc. Litig.*, 183 F.3d 970, 973 (9th Cir. 1999)). To meet the exacting standards of the PSLRA, a plaintiff must "specify each statement alleged to have been misleading," and "the reason or reasons why the statement is misleading." *Id.* at 1085 (internal citation omitted).

IV.   Discussion

Plaintiffs argue that Defendant repeatedly asserted, during the relevant period, that there were no issues or concerns over ARC-520's toxicity—despite an awareness that the drug did in fact have potentially lethal toxicity and the FDA was unlikely to approve it. *See generally SAC*. Defendants committed this fraud, Plaintiffs allege, to secure a vital collaboration deal with Amgen that would have resulted in, among other benefits, $35 million in upfront payments. *Id.* ¶¶ 148,150.

The Court's September 20 order addressed each allegedly misleading statement in Plaintiff's complaint individually; those statements and allegations have not changed in the SAC. *See Order* 6?17; *SAC* ¶¶ 57 ? 121. The Court will now group them according to the content of the statements and the nature of Plaintiffs' allegations.

    A.   Material Misstatements or Omissions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-08505 PSG-PJW | Date | December 21, 2017 |
|---|---|---|---|
| Title | In Re Arrowhead Pharmaceuticals, Inc. Securities Litigation | | |

        *i.      Statements Alleged to Downplay the Dangerousness of ARC-520*

Plaintiffs argue that Defendant "materially downplayed the toxicity risks associated with the DPC technology," which was "dangerous" and "resulted in high toxicity for patients." *SAC* ¶ 7. The statements alleged to be material misstatements or omissions regarding the dangerousness of the drug, triggering Section 10(b), are: the January 12, 2015 press release; the February 9, 2015 10-Q; the February 9, 2015 investor call; the June 15, 2015 Global Healthcare Conference presentation; the June 17, 2015 press release; the August 4 investor call; the September 24, 2015 press release and press conference; the December 14, 2015 press release, 8-K, and investor call; the March 17, 2016 presentation; the May 10, 2016 press release; and the Q2 2016 8-K and investor call.

Plaintiffs originally alleged that the above statements, which generally related to the success of the human trials, were misleading because Defendant concealed from investors that ARC-520 was "inherently dangerous" and "liable to result in harmful levels of toxicity." *Compl.*" ¶ 49. The Court determined that these allegations lacked particularized facts showing how and why ARC-520 was unsafe, and more importantly, at what dosage it was unsafe for humans. *See Order* 6. The Court also noted that Defendant *had* in fact revealed concerns with the DPC's toxicity issues to investors, and had been doing so for years. *Id.*

Plaintiffs bolster their assertion that ARC-520 was lethally toxic, as they did in the original complaint, with statements by a former employee ("FE1"); Plaintiffs originally claimed that FE1 had stated that the DPC was "inherently dangerous" and "liable to result in harmful levels of toxicity." *Compl.* ¶ 44. The Court noted that Plaintiffs had not actually pointed to any such quotes by FE1 or provided any basis of knowledge about the DPC, *see Order* 6; Plaintiffs have now removed both statements attributed to FE1 from the SAC. *SAC* ¶ 54. They have instead revealed the identity of FE1, "a senior chemist of Arrowhead who worked in the company's laboratory facilities in Wisconsin between September 2012 and December 2016." *Id.* The only other addition to the SAC with regard to this employee is that Plaintiffs now allege she said it was the "[DPC technology] that caused the non-human primate deaths at the higher dose levels." *Id.* This statement does not address the Court's prior concerns. While the Court now knows the employee's name and her position, it still has no particularized facts about how the DPC caused the deaths, what dosage level caused them, and how that dosage level correlated to the dosing used in the clinical trials. Plaintiffs cite to *Zucco Partners, LLC v. Digimarc Corp.*, 552 F. 3d 981, 995 (9th Cir. 2009), for the proposition that unidentified, confidential witnesses are subject to reliability and credibility attacks; it follows, Plaintiffs argue, that providing the names of the employees "eliminate[s] Defendants' basis for challenging the accuracy of the information they provide." *Opp*. 12. The Court disagrees. The accuracy of the employee's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-08505 PSG-PJW | Date | December 21, 2017 |
|---|---|---|---|
| Title | In Re Arrowhead Pharmaceuticals, Inc. Securities Litigation | | |

alleged statement is not the issue; the Court explicitly asked for that employee's basis of knowledge for her statement (which is now about the non-human primate deaths), the particulars of what caused the deaths, what dosage levels caused them, and so on. None of these facts have been alleged in the SAC.

Plaintiffs' opposition states that the amended complaint now "include[s] statements from the chemists that created the DPC technology which explain in a scientific manner how the DPC resulted in toxicity." *Opp*. 12. The SAC in fact contains the same statement, now attributed to Lori Higgs (formerly FE1), that "the peptide utilized in the DPC technology resulted in unsafe toxicity"—that the Court already found to be "conclusory." *Order* 6; *SAC* ¶ 54. Plaintiffs explain in more detail that the DPC's unsafe toxicity was the result of "dose accumulation . . . [which] caused siRNA treatments to be dangerous." *Id*. ¶ 29. This allegation in the SAC is not, however, attributed to Higgs, nor any other chemist (nor anyone at all). *Id*; *Opp*. 12.

Plaintiffs have still not pointed to particularized (or even generalized) facts about the human trials demonstrating that Defendant's statements that, for instance, the drug was thus far well-tolerated in humans, were false or misleading. Without such a showing, none of the above statements by Defendant are material misstatements.

ii. *Statements Alleged to Mischaracterize the FDA's Concerns*

Plaintiffs argue that the following statements by Defendant concealed that the FDA had placed a partial hold on the clinical trials because of "concerns over toxicity": the April 13, 2015 press release; the May 11, 2015 Q2 2015 10-Q; the May 11, 2015 press release; the May 11, 2015 investor call; and the August 4, 2015 Q3 2015 10-Q.

The Court asked Plaintiffs for specifics on what the FDA's concerns were, and "whether they were routine, whether they were only related to certain proposed doses of the drug, or anything else." *Order* 6. Plaintiffs do not provide these specifics. Instead, they now allege that the "FDA stopped Arrowhead from conducting a proposed clinical trial because the proposed ARC-520 doses . . . exposed study participants to unsafe toxicities." *SAC* ¶ 7. There is no factual support for the assertion that the FDA stopped the trial *because it was too dangerous*; indeed, the FDA did not stop the trial at all. Rather, it allowed Defendant to continue the trial once it had collected the information the FDA requested. *Id*. ¶ 49; *Mot*. 10.

In the original complaint, Plaintiffs alleged that it was (the now-named) FE1 who knew the specific reasons for the FDA's concerns; in the amended complaint, there is no longer any such suggestion. *See id*. ¶ 54. Instead, Plaintiffs point to general FDA policy that allows the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-08505 PSG-PJW | Date | December 21, 2017 |
|---|---|---|---|
| Title | In Re Arrowhead Pharmaceuticals, Inc. Securities Litigation | | |

FDA to "issue clinical holds when human subjects are or would be exposed to an unreasonable and significant risk of illness or injury," *id*. ¶ 59, or when it does not have "sufficient information . . . to assess the risks to subjects of proposed studies." *Id*. ¶ 48. They allege the hold was prompted by the first reason, but provide no facts that show the FDA believed the trial was too dangerous (rather than, for instance, needing more information on the possible risks); more saliently, they do not allege nor even suggest that that the FDA communicated to Defendant that the trial was too dangerous. Defendant could not have purposefully mischaracterized information it is not even alleged to have had. In any event, Defendants disclosed the partial hold to investors. *Id.* ¶ 64.

As for that disclosure, Plaintiffs now allege that Defendant's statements about the FDA "created the false impression that the FDA's clinical hold consisted of mere 'suggestions' and 'recommendations' rather than an actual hold. *SAC* ¶ 67. But as Plaintiffs acknowledge, Defendant affirmatively stated that the FDA "placed the program on partial clinical hold." *Id*. ¶ 64. Defendant stated that the FDA hold letter "*also* included some recommendations . . . regarding *non-hold* ideas that the FDA felt would be helpful to the program." *Id*. (emphasis added). Plaintiffs' own pleading, then, reveals that Defendant told investors about the hold *and* about the other recommendations; having revealed the hold, then, Defendant's statements about the FDA's additional, non-hold suggestions do not convey the impression that no hold was directed.

   *iii.*   *Statements About "De-Risking"*

In its prior order, the Court determined that the October 14, 2015 press release and presentation; the November 16, 2015 press release; the November 19, 2015 presentation; the February 9, 2016 press release and Q1 2016 10-Q; and the August 9, 2016 investor call and Q3 2016 10-Q were "forward-looking" statements or "statements of optimism relating to how Defendant interpreted its study results," which are non-actionable. *Order* 13. Plaintiffs argue in opposition that statements about "de-risking" are not "forward-looking" but instead suggest that Defendant's "*past* data had proven their ability" to overcome toxicity issues. *Opp*. 20 (emphasis added). Plaintiffs liken Defendant's statements to those in cases in which statements created the impression that FDA approval "was in the bag" or where the FDA's standard for approval was concealed. *Id*. The Court does not agree with Plaintiffs' suggestion that Defendant's use of "de-risking" meant that FDA approval was a sure thing or that Defendant had "proven their ability" to overcome these issues. The Court already determined that statements such as "[the data] gives us great confidence," "we are comfortable that we can dose-escalate rapidly," and "ARC-520 is well tolerated with no serious adverse events" are non-actionable statements of optimism based on Defendant's interpretation of its trial results. *See generally Order*. Plaintiffs continue

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-08505 PSG-PJW | Date | December 21, 2017 |
|---|---|---|---|
| Title | In Re Arrowhead Pharmaceuticals, Inc. Securities Litigation | | |

to allege that these statements were made by Defendant to "prove" that toxicity issues had definitively been overcome, but have not added allegations regarding these statements that change the Court's prior analysis.

### iv. Non-Human Primate Deaths

Defendant reiterates that the non-human primate studies were *designed* to discover at what dosage, in non-human primates, the drug became fatally toxic; the fact that it did—while undoubtedly tragic for the non-human primate test subjects—cannot render Defendant's statements about the *human* clinical trials misleading. *Mot*. 16. Plaintiffs vigorously dispute this notion, arguing that the death of the monkeys was "extremely significant," as evidenced by the FDA's swift action. *Opp*. 19. In either event, the Court in its prior order determined that the date of the non-human primate deaths did matter, as to Defendant's July 13, 2016 presentation and September 9, 2016 interview,[1] because "referring to the chimpanzee study as one of the bases for concluding that ARC-521 was 'truly de-risked,' when ARC-520 may in fact have killed all of the monkeys (even if not the chimpanzees), is materially misleading." *Order* 15. Whether the sino monkeys had died by the time these statements were made depended on whose version of events was accurate; Plaintiffs alleged the deaths occurred in "late 2015 or early 2016," while Defendants claimed they happened in September of 2016. Both the July 13 and September 9 statements, then, could be misleading if the deaths occurred when Plaintiffs allege they did.

Plaintiffs acknowledge that the Court's analysis in the first order hinged upon "FE2," the sole basis for Plaintiff's date range. *See Opp*. 17. He was alleged to have known the date of the non-human primate deaths: in "late 2015 or early 2016." *Id*. 18. The Court stated that "Plaintiffs do not provide a particularized foundation as to FE2's basis of knowledge (and indeed if he did have such knowledge, presumably he would have a more specific idea of when the deaths occurred)," and thus found the death date allegation insufficient. *Order* 15.

---

[1] The Court already determined that the death date of the monkeys is irrelevant to the September 29, 2016 statement, which explicitly refers to "our *clinical* programs," "patients," and "volunteers." Statements clearly referring to the human trials are not rendered misleading by omitting statements about the non-clinical trials. Plaintiffs continue to argue that the September 29 statement could have been mistaken for animal trials (they implausibly suggest that the statement "*obviously*" refers to the animal trials), *Opp*. 18, but they add nothing to the SAC on this point. The Court has already addressed this statement and need not do so again.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-08505 PSG-PJW | Date | December 21, 2017 |
|---|---|---|---|
| Title | In Re Arrowhead Pharmaceuticals, Inc. Securities Litigation | | |

Plaintiffs have now added the name of FE2 and his position as former Vice President of Chemistry for Defendant. *SAC* ¶ 55. Instead of addressing the Court's questions about his basis of knowledge for when the deaths occurred and what exactly caused them, Plaintiffs recite his qualifications—including that his "name appears on numerous articles discussing the DPC technology and even the patent for its creation." *Id.* Plaintiffs conclude that his background in the DPC technology "*supports the conclusion* that he was supervising the pre-clinical and clinical studies" that lead to the deaths. *Id.* (emphasis added). The Court agrees with Defendant that "if Plaintiffs actually had a basis to claim this employee 'was supervising the pre-clinical and clinical studies' they would say so." *Mot*. 13. Even if he did supervise the trials, Plaintiffs have still not provided specifics about what caused the deaths and a more specific window for when they occurred. Regardless, the Court declines to make the inferential leap Plaintiffs ask it to; if this employee did *in fact* supervise the studies and knows what caused the deaths, then he also knows when they occurred. Plaintiffs have fallen short of pleading any of those facts.

      B.    <u>Scienter</u>

In its prior order, the Court found Plaintiff's allegations of scienter similarly lacking, finding the scenario they allege, "that Defendant knew that ARC-520 has unsafe toxicity levels and hid that fact, deceiving the public in order finance the testing of a drug it knew could never be approved by the FDA and thus never be brought to market," to be implausible without specific facts to support it. *Order* 16. The PSLRA requires both falsity and scienter to be pleaded with particularity. *See Tellabs, Inc. v. Makor Issue Rights, Ltd.*, 551 U.S. 308, 323 (2007). The inference of scienter must be "strong," and the Court must "take into account plausible opposing inferences." *See* 15 U.S.C. § 78u-4(b)(2)(A); *Tellabs*, 551 U.S. at 323. The Court found Defendant's scenario more plausible than Plaintiffs', noting that courts in other circuits have similarly rejected scenarios such as the one Plaintiffs alleged. *Order* 17; *see Cozzarelli v. Inspire Pharm.*, 549 F.3d 618, 627 (4th Cir. 2008) ("It is improbable that [the company] would stake its existence on a drug and a clinical trial that the company thought was doomed to failure."); *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 170 (3d Cir. 2014) ("[T]he initiation of Phase 3 cost millions of dollars and required FDA approval, rendering it improbable that defendants would have continued if they did not believe their interpretation of the interim results or if they thought the drug a complete failure."). *SAC* ¶ 141; *Mot*. 22.

Plaintiffs now state that "Arrowhead would not have been able to raise this capital if the omitted information about ARC-520 and the DPC technology had been disclosed." *SAC* ¶ 141. This additional statement does not change the Court's prior analysis. Plaintiffs add no additional facts to the SAC about Defendant's partnership with Amgen to establish that Defendant could

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-08505 PSG-PJW | Date | December 21, 2017 |
|---|---|---|---|
| Title | In Re Arrowhead Pharmaceuticals, Inc. Securities Litigation | | |

not have secured it had the dangers of ARC-520 been disclosed (which the Court has already determined Defendant *did* disclose).

Saliently, although the SAC itself remains largely unchanged, Plaintiffs in opposition now back away from the theory that Defendant *knew* its drug was bound to fail—instead arguing that Defendant "concealed bad news" about the drug from investors in the hopes that news would be "overtaken by good news." *Opp.* 23. Concealing bad news in order to pave the way for the Amgen deal and the other bonuses would support Plaintiffs' *falsity* claims. To support their *scienter* claims, however, they need to allege facts demonstrating that Defendant knew its drug would not be approved—something Plaintiffs did not sufficiently plead in the SAC and which they no longer assert in their opposition.

Defendant also argues that Plaintiffs claim for the first time in opposition that Defendant "delayed disclosing the animal deaths to the FDA," a fact Plaintiffs argue shows scienter. *Opp.* 22; *Reply* 6. The Court disagrees with Defendant that the SAC contains no such allegation; the SAC states, "Notwithstanding the fact that these non-human primate deaths occurred in late-2015 or early-2016, Arrowhead did not disclose this information until November 2016 (and only after being forced to in response to the FDA's decision to place a clinical hold on the Company's ARC-520 Phase 2b trial." *SAC* ¶ 134. Nonetheless, the Court has determined that Plaintiffs have failed to establish the date of the non-human primate deaths; accordingly, this statement cannot be the basis upon which to infer scienter.

Because the Court was specific in its directive that Plaintiffs provide particularized facts showing that Defendant's "actual knowledge of generalized, historical toxicity problems with delivery systems such as EX1 and knowledge of the [non-human primate] deaths *contradicts* statements about the drug's efficacy and toxicity in humans" and Plaintiffs have failed to amend their complaint to do so, the Court again finds the scienter allegations to be insufficient.

V.      Leave to Amend

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). The Court considers whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-08505 PSG-PJW | Date | December 21, 2017 |
|---|---|---|---|
| Title | In Re Arrowhead Pharmaceuticals, Inc. Securities Litigation | | |

As the SAC constitutes Plaintiffs' fourth complaint and second attempt to plead their allegations to the Court's satisfaction, the Court does not believe Plaintiffs can cure their complaint by further amendment. Accordingly, the Court **DENIES** Plaintiffs leave to amend.

VI.   Conclusion

As with its prior order, the Court need not address Plaintiffs' loss causation and Section 20(a) arguments, having found no underlying 10b-5 violation. Accordingly, the Court **GRANTS** Defendant's motion to dismiss without leave to amend.

This order therefore closes the case.

**IT IS SO ORDERED.**